DEAN *v.* GADSDEN TIMES PUBLISHING CORP.

No. 72–1310.   Decided June 11, 1973

PER CURIAM.

Petitioner sued respondent, his employer, to recover compensation lost as a result of the employee's being required to serve as a juror.   An Alabama statute provides that an employee excused for jury duty "shall be entitled to his usual compensation received from such employment less the fee or compensation he received for serving" as a juror.   Ala. Code of 1940, Tit. 30, § 7(1) (Supp. 1971).   It appears that petitioner served on a jury, received pay for the jury duty and submitted a bill of $63 to respondent, the difference between his regular wages and his jury pay.   Respondent refused to pay; the trial court rendered a judgment for petitioner; but the Court of Civil Appeals of Alabama held the state Act unconstitutional.   49 Ala. App. 45, 268 So. 2d 829. The Supreme Court of Alabama denied certiorari to review that judgment.   289 Ala. 743, 268 So. 2d 834.   The case is here on petition for a writ of certiorari which we grant.

The Court of Civil Appeals held that the Act deprives the employer of property in violation of the Due Process Clause of the Fourteenth Amendment, its main reliance

being on *Coppage* v. *Kansas,* 236 U. S. 1. *Coppage* declared unconstitutional as violative of due process a state statute which made it a misdemeanor for an employer to require an employee to agree not to join or remain a member of a union during his employment. That was when substantive due process was in its heyday. We cited *Coppage* along with other decisions of like tenor in *Day-Brite Lighting, Inc.* v. *Missouri,* 342 U. S. 421, where we sustained a state statute which made it a misdemeanor for an employer to deduct wages of an employee for four hours when the employee absents himself from his job in order to vote. We held that the requirement placed on the employer to pay wages for this brief period when the employee is voting stood constitutional muster.

We said:

"Most regulations of business necessarily impose financial burdens on the enterprise for which no compensation is paid. Those are part of the costs of our civilization. Extreme cases are conjured up where an employer is required to pay wages for a period that has no relation to the legitimate end. Those cases can await decision as and when they arise. The present law has no such infirmity. It is designed to eliminate any penalty for exercising the right of suffrage and to remove a practical obstacle to getting out the vote. The public welfare is a broad and inclusive concept. The moral, social, economic, and physical well-being of the community is one part of it; the political well-being, another. The police power which is adequate to fix the financial burden for one is adequate for the other. The judgment of the legislature that time out for voting should cost the employee nothing may be a debatable one. It is indeed conceded by the

opposition to be such. But if our recent cases mean anything, they leave debatable issues as respects business, economic, and social affairs to legislative decision. We could strike down this law only if we returned to the philosophy of the *Lochner,*[1] *Coppage,* and *Adkins*[2] cases." *Id.,* at 424–425.

The Alabama statute stands on no less sturdy a footing.

*Reversed.*

---

[1] *Lochner* v. *New York,* 198 U. S. 45.

[2] *Adkins* v. *Children's Hospital,* 261 U. S. 525.