These are appeals from an order of the Circuit Court of Jefferson County holding that § 31-2-13, Code 1975 is unconstitutional. We affirm.
AIA, a trade organization composed of several hundred businesses, and industries in the state, and Bruno's, a private employer, filed suit against White, and several State officials, in the Circuit Court of Jefferson County challenging the constitutionality of § 31-2-13, Code 1975 (the private employers' assessment) and requesting declaratory, and injunctive relief. White, McConnell, and Amos, all employees of Bruno's, then filed a class action on behalf of all privately employed National Guard and Reserve members for back pay under § 31-2-13. White subsequently dismissed his complaint in the latter suit and filed an answer, counterclaim, and joinder of defendants as representatives of a class in the AIA suit. These actions, along with other suits, where the constitutionality of § 31-2-13 was a basic issue were consolidated for trial on that issue alone. The trial court certified under ARCP 54 (b) that its order was a final order. White, McConnell and Baxley then filed separate appeals. The trial court, subsequently, on a motion by the Attorney General, issued an order clarifying that its prior order only held unconstitutional that portion requiring private employers to pay their employees for military leave.
Section 31-2-13, Code 1975 sets forth the private employers' assessment:
 § 31-2-13. Service benefits for government employees, etc. *Page 617 
 "(a) Military leave of absence. — All officers and employees of the state of Alabama, or of any county, municipality or other agency or political subdivision thereof, or officers or employees of any public or private business or industry who shall be active members of the Alabama national guard, naval militia or the Alabama state guard organized in lieu of the national guard, or of any other reserve component of the armed forces of the United States, shall be entitled to military leave of absence from their respective civil duties and occupations on all days that they shall be engaged in field or coast defense or other training or on other service ordered under the provisions of the National Defense Act, or of the federal laws governing the United States reserves, without loss of pay, time, efficiency rating, annual vacation or sick leave, but no such person granted such leave of absence with pay shall be paid for more than 21 working days per calendar year, and such persons shall be entitled, in addition thereto, to be paid for no more than 21 working days at any one time while called by the governor to duty in the active service of the state. This section shall apply to all schools and institutions of learning supported by state funds." (Emphasis added.)
Appellants assert that this section does not violate due process, equal protection, and obligation of contracts provisions of the U.S. and Alabama Constitutions. U.S. Const. Art. I, § 10, Amend. XIV; Ala. Const. Art. 1, §§ 6, 22.
The private employers' assessment of § 31-2-13 was enacted under the State's police power for the purpose of encouraging participation by Alabamians in the National Guard or Military Reserves or phrased in the alternative, deterring employers from discouraging their employees from serving in the National Guard or Reserve. The appropriateness of that purpose is unquestioned.
The statute provides benefits for a class, employees, while imposing the burden to provide those benefits on another class, employers. A classification made in legislation must be reasonable and not arbitrary in order to avoid violation of the due process clause of Art. I, § 6 of the Alabama Constitution because that document contains no equal protection clause as such.
 "While the due process and equal protection guarantees are not coterminous in their spheres of protection, equality of right is fundamental in both. Each forbids class legislation, arbitrarily discriminatory against some and favoring others in like circumstances. . . . It is essential that the classification itself be reasonable and not arbitrary, and be based upon material and substantial distinctions and differences reasonably related to the subject matter of the legislation or considerations of policy, and that there be uniformity within the class. . . ." Opinion of the Justices, 252 Ala. 527, 530, 41 So.2d 775, 777
(1949). (Citations omitted.)
One arbitrary group, National Guard and Reserve members, is singled out by the statute to receive double pay during the period of their Reserve or Guard duty. They are already receiving full compensation from the National Guard or Military Reserve for the services they render to the public at large. Other persons furnishing such services to the general populace do not receive this special compensation. Sufficient incentives to encourage initial or continued participation in the Guard exist in their Guard pay, retirement programs, training programs and the like. The amount of pay the Guard member receives is not reasonably related to the nature of the public service he renders nor his need of additional money to continue his Guard membership but is based on the salary he is receiving from his employer.
Another class of citizens, employers, is singled out to bear the whole burden of this double pay provision and in return they receive no corresponding special benefit for their peculiar contribution to the public welfare. The entire public reaps the benefits from the existence of the National Guard and Military Reserves — protection of *Page 618 
their persons and property, aid in natural disasters, and much more. Yet, arbitrarily the cost of insuring the continuance of that protection has been imposed on only one segment of the benefiting group, employers. Even within this arbitrary class the assessment operates in a capricious fashion. What an employer must pay will depend on such factors as its wage scale, the extent to which it is a labor-intensive business, and the number of employees who have voluntarily chosen to participate in the National Guard or Reserve.
Courts in other states have considered and held unconstitutional similar statutes which arbitrarily imposed a peculiar burden on employers for beneficial services rendered to the general public. Those cases have held the statutes, based on impermissible classifications, violate both equal protection and due process provisions of the state constitutions as well as the federal constitution.
The Hawaii Supreme Court in Hasegawa v. Maui Pineapple Co.,Ltd., 52 Haw. 327, 475 P.2d 679 (1970), held that a statute requiring employers of more than twenty-five persons to pay the difference between the amount an employee received for service on a public board or jury and his normal salary or wages violated the equal protection and due process provisions of the Hawaii and U.S. Constitutions. The court stated that a state could classify its citizens for various purposes and treat some persons differently than others but the classification had to be reasonably related to the purpose of the legislation. No such reasonable relationship could be found by the court even though the legislature had a legitimate interest in providing for juries and public boards. Thus, the statute worked an invidious class distinction. The court observed:
 "The general public acting through its elected representatives has assumed the financial and administrative responsibility of having juries and public boards and commissions. These public functions, like the provision of police and fire protection, benefit all who live in the community. The cost of a proper state function conducted for the public benefit cannot be arbitrarily charged to one class in the society. . . . There is nothing in the position of private employers within our society which places them in a relationship to these public institutions different from the relationship of the general public to them. Therefore, we hold that by imposing liability for the cost of juries and public boards and commissions on private employers HRS § 388-32 works an invidious class distinction in violation of the equal protection clauses of both the Hawaii and Federal Constitutions." 475 P.2d at 683 (Citations omitted.)
In Heimgaertner v. Benjamin Electric Mfg. Co., 6 Ill.2d 152,128 N.E.2d 691 (1955) the Supreme Court of Illinois held a "pay-while-voting" statute, providing that an employer not only allow his employees time off to vote but also pay their usual wage or salary for that time, an invalid exercise of the police power in that it deprived employers of property without due process of law, denied equal protection of the laws, and was an impairment of the right to contract. Justice Daily speaking for the court stated:
 "The relationship and reasonableness of the provision which permits each eligible voter to absent himself from his employment on election days has not, to our knowledge, ever been seriously questioned even though such absence might in itself cause substantial inconvenience and loss to an employer. Indeed, it is not questioned on this appeal. However, the further provision of the section which ordains that no deductions shall be made from any wages or salaries because of such absence, is not so easily justified. Whether pay-while-voting bears a real and substantial relation to getting out the vote is a matter of debate. In fact this was recognized by the dissenting justice in the Day-Brite case, who pointed out that a requirement to pay time-and-a-half, or double time, would do even better in swelling the vote. Whatever the relationship, however, we are of the opinion that the provision is a questionable means of attaining the desired end, and are in *Page 619 
accord with the dissenting justice that [342 U.S. 421, 72 S.Ct. 409, 96 L.Ed. 469] `to shift the whole voting burden from the voter to someone else who happens to stand in some economic relationship to him' is neither just nor reasonable." 128 N.E.2d at 696.
Not only did the court fail to discover a reasonable relationship, it also found arbitrariness in the one class of voters singled out to be paid for voting and in the class chosen to pay that class of voters, their employers. The court observed:
 "The most arbitrary classification is that of those who are chosen to pay this arbitrary class of voters. The selection of payors is not related to anything connected with voting but rests solely on a chance economic relationship. Such a regulation, which applies to some cases and does not apply to other cases not essentially different in kind, cannot be sustained." 128 N.E.2d at 698.
The Kentucky Court of Appeals in Illinois Central RailroadCo. v. Commonwealth, 305 Ky. 632, 204 S.W.2d 973 (1947) held a similar "pay-while-voting" statute to be an unconstitutional exercise of the state's police power. Legislative authority could not be used under the guise of promoting the public interest to arbitrarily interfere with private business.
Statutes providing for jury and voter pay that have been upheld on federal constitutional grounds may be distinguished from § 31-2-13. The Missouri voter pay statute was upheld inDay-Brite Lighting v. Missouri, 342 U.S. 421, 72 S.Ct. 409,96 L.Ed. 469 (1951), on a finding that it was necessary to prevent employers from influencing their employees' voting. Here, the employers are not attempting in any way to prevent their employees from serving in the Guard or Reserves. Likewise, the Alabama voter pay statute upheld in Dean v. Gadsden TimesPublishing Corp., 412 U.S. 543, 93 S.Ct. 2264, 37 L.Ed.2d 137
(1973), is different from the statute involved here. In bothDay-Brite and Dean the court recognized that there were extreme situations where an employer might be required by statute to pay wages for a period with no relation to a legitimate end. While voting, jury duty, and Guard or Reserve service all involve performing a civic duty, voting and jury duty impose a much less onerous burden on employers. They are mandatory but are sporadic and involve smaller numbers of employees. National Guard or Reserve service is voluntary and requires that an employee be absent from work a minimum of 21 days for summer camp in addition to drill periods each year. If the employer's business is a labor-intensive one, more employees will likely be involved in Guard or Reserve service than in jury duty at any one time. The financial burden of salary or wages for Guard or Reserve members will be greater than for employees absent from work to vote or serve as jurors. To impose such a heavy burden on employers where no reasonable relation exists between absence from work for Guard or Reserve service and the legitimate end of insuring adequate protection for Alabama residents by promoting participation in the Guard or Reserve is clearly constitutionally impermissible.
Section 31-2-13 also impairs the contractual obligations created in an employment relationship. All contracts are made subject to the implied condition that their performance may be frustrated by a proper exercise of the State's police power. However, the exercise of the power must be for an end benefiting the public and the means utilized must be reasonably adapted to that end. Garrett v. Colbert County Board ofEducation, 255 Ala. 86, 93, 50 So.2d 275, 280 (1951).
Employers in this state have policies governing employee leave time for National Guard and Reserve duty that are an integral part of the employment contract to which they and their employees have agreed. Different employers have policies which range from leave with full pay, leave without pay, or paying the difference between the employee's regular salary and his military pay, to permitting the taking of paid vacation time. In each case the policy agreed to is as important a contractual provision *Page 620 
as sick leave, salary or vacation provisions. The requirement that employers pay their employees for 21 days a year Guard or Reserve service when they do not work not only impairs the employment contract provisions on military leave but also significantly alters working hours and pay provisions. It is impermissible for the legislature as a means to accomplish a legitimate end — continued public protection by encouraging participation in the Guard or Reserves — to enact a statute impairing the obligation of employment contracts. The means are not reasonably adapted to the beneficial end, thus the statute is in violation of constitutional provisions forbidding impairment of contracts.
The Constitution of Alabama provides certain fundamental safeguards separate and independent of the provisions of the U.S. Constitution. The private employers' assessment of §31-2-13, Code 1975 violates Art. 1 § 6, the due process provision, and Art. 1 § 22, the impairment of contracts provision of the Constitution of Alabama, 1901.
AFFIRMED.
TORBERT, C.J., and BLOODWORTH, JONES, ALMON, SHORES, EMBRY and BEATTY, JJ., concur.
MADDOX, J., recuses himself.